UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------
In re
                    CIARA N. MINOR,                                    09-12095 B


                        Debtor                                 DECISION & ORDER
---------------------------------------------------
HAROLD P. BULAN, as Trustee in Bankruptcy of
Ciara N. Minor,

                        Plaintiff


            v.                                                AP 11-1036 B

PRE-SETTLEMENT FINANCE, LLC and
CIARA N. MINOR,

                        Defendants
---------------------------------------------------

                            Bulan, Chiari, Horwitz & Ilecki
                            Harold P. Bulan, Esq., of counsel
                            14 Lafayette Square, Suite 1440
                            Buffalo, New York 14203
                            Attorneys for the Chapter 7 Trustee

                            Kramer Levin Naftalis & Frankel LLP
                            Eric A. Trischwell, Esq., of counsel
                            Robert T. Schmidt, Esq., of counsel
                            Marjorie E. Sheldon, Esq., of counsel
                            1177 Avenue of the Americas
                            New York, New York 10036
                            Attorneys for Pre-Settlement Finance, LLC


Bucki, U.S.B.J.

            This court previously denied a motion by the Chapter 7 trustee to authorize

the settlement of claims to the proceeds of a personal injury action. *See In re Minor*, 443 B.R.

282 (Bankr. W.D.N.Y. 2011). Consequently, the trustee commenced the present adversary

proceeding to determine the validity and extent of the respective interests of the debtor, of an

investor called Pre-Settlement Finance, LLC, and of the bankruptcy estate. Presently, upon a

motion for summary judgment, this court must consider the enforceability of a pre-settlement

finance agreement, as well as the effect of that agreement on the debtor's claim to an exemption.

As now presented to the court, the facts are essentially identical to those recited in our prior written decision. For ease of reference, however, we will here repeat the relevant circumstances of this case.

After an automobile accident in September of 2006, Ciara Minor commenced litigation in state court to recover compensation for her resulting injuries. While this action was pending, she entered into four separate agreements with an entity called Pre-Settlement Finance, LLC (hereafter referred to as "PSF"). Pursuant to these agreements, PSF advanced an initial sum of $12,500 in November 2007; the further sum of $2,500 in December 2007; the further sum of $3,000 in August 2008; and a final sum of $600 in December 2008. In consideration of these advances, Minor agreed that from the proceeds of her outstanding litigation, PSF would receive the total of its advances, together with processing fees of $875 and interest calculated at an annual rate of 42.5 percent. The parties stipulated, however, that Ciara Minor would have no personal obligation to pay any sum other than from what she might recover from her personal injury action.

Ciara Minor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 8, 2009, a date subsequent to her receipt of the four advances from PSF. In schedules filed with her petition, the debtor listed her personal injury cause of action as an asset of the bankruptcy estate, and reported that its proceeds were subject to the lien of PSF. Further, as allowed under the then applicable provisions of New York Debtor and Creditor Law §282(3), she asserted an exemption with respect to the first $7,500 of any recovery on account of the personal injury. On June 26, 2009, the trustee filed a timely objection to this claim of exemption. After a hearing on the trustee's motion, the court issued an order holding the trustee's objection in abeyance, until a resolution of the personal injury litigation.

On September 10, 2009, this court granted the trustee's motion to authorize the employment of special counsel to continue prosecution of the debtor's personal injury litigation. That counsel eventually negotiated a settlement of the outstanding cause of action. Meanwhile, the trustee undertook discussions to resolve the interests of PSF. Accordingly, the trustee moved for authority to settle the personal injury cause of action for $55,000; to authorize payment of the fees and disbursements of the estate's special counsel; and to authorize payment of $23,808 to PSF in full satisfaction of any secured claim. After several hearings on this matter, the court approved the gross amount of the personal injury settlement and authorized payment of the fees and disbursements of special litigation counsel. However, for the reasons stated in its opinion of February 24, 2011, this court rejected the proposed agreement with PSF. Specifically, the court found that the trustee had failed to establish that PSF possessed an enforceable lien. Because the trustee had presumed the existence of a valid lien, his proposed settlement with PSF could not satisfy the test of reasonableness.

In the context of the prior proceedings in this case, the court could not act beyond a refusal to approve the proposed settlement. Bankruptcy Rule 7001(2) provides that an adversary proceeding is required "to determine the validity, priority or extent of a lien or other interest in property." Therefore, in order to resolve the competing claims to proceeds from the personal injury settlement, the trustee commenced an interpleader action against PSF and against the debtor, Ciara N. Minor. Ms. Minor has defaulted, but PSF has filed a timely answer. Conceding that the present dispute falls within the core jurisdiction of the bankruptcy court, PSF has now moved for summary judgment. In its papers, PSF states that for purposes of resolving the matter, it no longer asserts a secured position. Rather, it asks that the court recognize the validity of an unsecured claim, and that the court overrule any challenge based on theories of usury, champerty and unconscionability. In response, the trustee requests that the court

exercise its sound judgment in determining the rights of PSF, and that the debtor's exemption be disallowed to the extent of any distribution to PSF.

Discussion

New York law imposes at least three profound challenges to the enforcement of agreements for person injury litigation financing.  First, as a codification of common law rules against champerty, Section 13-101(1) of the General Obligations Law prohibits the transfer of any claim for the recovery of damages for a personal injury.   Second, New York generally prohibits the charging of interest on loans at a rate that exceeds the usury limitation of 16 percent per annum.  N.Y. GENERAL OBLIGATIONS LAW § 5-501(2) and N.Y. BANKING LAW § 14–a.  Finally, borrowers may attack litigation finance agreements on grounds of unconscionability, a defense that can arise from "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."   22 N.Y.JUR.2D *Contracts* § 151 (2008).

In the present instance, PSF undertook to design funding agreements that would avoid the legal impediments to litigation financing.  Recognizing that Ciara Minor could not convey her cause of action, PSF instead purported to effect only an assignment of litigation proceeds.  In order to avoid a claim of usury, PSF structured the agreements not as loans, but as investments providing a contingent right of repayment that would arise only in the event of a recovery on account of the personal injury.  Otherwise, as stated in paragraph 3 of the agreements, Ciara Minor would "have no liability whatsoever to PSF."  In their format, the funding agreements conformed with guidelines that the attorney general for New York State had accepted as reasonable, under the terms of a settlement between the attorney general and the American Legal Finance Association.  Thus, for example, PSF provided various disclosures.  The agreements included a five-business-day right of recision and became effective only after the borrower's counsel had reviewed the contract.

PSF cogently argues that the agreements maintain conscionability, by reason of safeguards that conform with the requirements of the New York State Attorney General. In its earlier published opinion, this court reviewed the legal authorities that support the further position of PSF, that it has structured the funding agreements to avoid a violation of usury and the prohibition against the assignment of a claim for the recovery of damages for a personal injury. *In re Minor*, 443 B.R. 282, 286-87 (Bankr. W.D.N.Y. 2011). Now, in the context of the present proceeding to determine interests in the personal injury recovery, neither the debtor nor her trustee has challenged the legality of the funding agreements. But in order to create a legal framework, PSF had need for its agreements to adopt a special format and structure. To the extent that a lender wishes to enjoy the benefits of such heterodoxy, it must also encounter the consequences.

The funding agreements incorporate two features that will affect rights in bankruptcy to receive a distribution of proceeds from personal injury litigation. First, in order to avoid a violation of General Obligations Law § 13-101, PSF took not an assignment of any cause of action, but only an assignment of proceeds. Under New York law, such a contract "will take effect as an equitable assignment." *Williams v. Ingersoll*, 89 N.Y. 508, 519 (1882). With respect to litigation proceeds, therefore, PSF acquired only an equitable lien. *Id.* at 521. Meanwhile, Ciara Minor retained the legal interest in her causes of action. Pursuant to 11 U.S.C. § 541(a)(1), this legal interest then became property of the bankruptcy estate. Outside bankruptcy, PSF might have little reason to fear the existence of a competing legal right, in that any potential assignees of those legal rights would encounter the prohibitions of General Obligations Law § 13-101. But bankruptcy creates an estate by operation of law. Consequently, without constraint from any provision of the General Obligations Law, the bankruptcy filing effectively transferred the debtor's legal interests into the bankruptcy estate for the benefit of all creditors.

Although PSF can enforce its equitable rights as against Ciara Minor, those equitable rights are unenforceable as against the superior legal interest of a bankruptcy estate. The New York Court of Appeals recited the controlling standard in *Titusville Iron Co. v. City of New York*, 207 N.Y. 203, 209 (1912): "Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. But it seems settled law, at least in this state, that they will not be enforced as against creditors." Thus, in that case, the court allowed a bankruptcy trustee to supercede the interest of a creditor claiming a mere equitable lien.

In its memorandum of law, counsel for PSF states that it does not contest the conclusion "that PSF held only an equitable lien at the time of bankruptcy filing and that such a lien does not give PSF priority over other creditors." It requests, however, that PSF be allowed a general unsecured claim. Thus, we must consider the consequences of a second feature of the funding agreement, namely those provisions designed to avoid a usury violation.

The funding agreements created a contingent right of repayment from any recovery on the personal injury action, but without imposition of personal liability upon Ciara Minor. To this end, the agreements state that "PSF is to be paid only if such proceeds are received through settlement, judgment or verdict," and that "in the event there is no recovery from settlement, judgment or verdict in the Action, Plaintiff will owe no money to PSF and Plaintiff shall have no liability whatsoever to PSF." Essentially, the debtor received four non-recourse loans. As such, the loans established no liability for which PSF can receive a distribution from property of the Chapter 7 estate.

Section 502(b) of the Bankruptcy Code provides that the court shall allow an otherwise valid claim, "except to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." In the present instance, settlement of

the personal injury action has satisfied any contingency and has caused the maturity of PSF's right to collect payment. Rather, the obligation is unenforceable against the debtor by reason of the contractual provisions that deny recourse. As against property of the debtor, the obligation is now unenforceable because PSF holds only an equitable interest that is subordinate to the legal rights of the bankruptcy trustee. As against the bankruptcy estate, therefore, PSF holds no allowable claim, for the same reason that the Court recognized in *Liona Corp. v. PCH Associates (In re PCH Associates)*, 949 F.2d 585, 604 (2nd Cir. 1991): "Ordinarily, a secured creditor who has advanced funds on a full recourse basis also would have an unsecured claim to the extent that the value of its secured claim exceeded the value of the debtor's interest in the collateral . . . . However, section 502(b)(1) operates to disallow the unsecured or deficiency claim of such a creditor when the financing that provides the basis of the claim was advanced on a *nonrecourse* basis" (emphasis in original).

The text of the funding agreements serve to confirm that PSF enjoys no right to share in a distribution from the bankruptcy estate. Paragraph 1(g) of each agreement states as follows:

> "In the event Plaintiff commences, or has commenced against him/her, any case, or other proceeding, pursuant to any bankruptcy, insolvency, [or] similar law prior to my receipt of the full amount due PSF pursuant to this Agreement, Plaintiff shall cause the said amount due PSF to be described as a partial ownership of Plaintiff's asset (potential proceeds from the Litigation) in any oral or written communications, including but not limited to, any schedule or other document, made or filed in connection with any such case or proceeding. In no event shall Plaintiff permit the amount due PSF to be described as a debt or obligation to PSF in any such communication, document or filing.

Having agreed that there exists no "debt or obligation" owing to itself, PSF may not now assert an unsecured claim.

This court previously reserved decision on the trustee's objection to the debtor's claim to an exemption in the first $7,500 of litigation proceeds. Specifically, the trustee asserts that the debtor lost her right to claim an exemption when she assigned the proceeds of litigation to PSF. Any such assignment will surely impact the respective rights of Ciara Minor and PSF. Having assigned her interest in proceeds to PSF, Ciara Minor must ultimately forfeit any exempted funds and such portion of any surplus that may be needed to satisfy the equitable interest of PSF. That outcome, however, does not impair the existence of an exemption right. Accordingly, the trustee's objection to the claim of exemption is denied. The exemption appropriately preserves an entitlement that Ciara Minor has transferred to PSF.

## Conclusion

To avoid the effects of prohibitions against usury and champerty, PSF created a contorted arrangement that gave to PSF nothing more than a minimally enforceable interest in equity. Having secured the benefit of legal compliance, PSF must now endure the consequences of its arrangement. PSF enjoys a right to recover litigation proceeds to which Ciara Minor may be personally entitled, but not to share in any proceeds that have become non-exempt assets of the bankruptcy estate. In the present instance, Ciara Minor has duly claimed an exemption under New York law to retain litigation proceeds in the amount of $7,500. That exemption is allowed, but because Ciara Minor has assigned her interest in proceeds, the trustee shall disburse this sum to PSF. Otherwise, the trustee shall retain the net amount of litigation proceeds for distribution on account of allowed claims other than the interest of PSF. In the unlikely event that he is able to effect payment to creditors in full,[1] the trustee may release any surplus first to PSF for the balance of its entitlement, and then to Ciara Minor.

So ordered.

---

[1] The trustee reports that unsecured claims will exceed the net amount of litigation proceeds. Accordingly, PSF is unlikely to receive any sum in excess of $7,500, and Ciara Minor should not anticipate any distribution of surplus.

Dated:      Buffalo, New York          __/s/_____CARL L. BUCKI_____
            November 2, 2012           Carl L. Bucki, Chief U.S. Bankruptcy Judge, W.D.N.Y.